IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| DR. SARAH COULTAS, | Civil No. 24-00104 MWJS-KJM |
| Plaintiff, | ORDER DISMISSING COMPLAINT AND DENYING APPLICATION TO PROCEED IN FORMA PAUPERIS |
| vs. | |
| CATHY BETTS, *et al.*, | |
| Defendants. | |

**ORDER DISMISSING COMPLAINT AND DENYING
APPLICATION TO PROCEED IN FORMA PAUPERIS**

On March 5, 2024, Plaintiff Dr. Sarah Coultas filed her complaint and applied to proceed in forma pauperis, that is, without prepayment of fees or security.  In considering such an application, the Court must, among other things, screen the proposed complaint to ensure that it states a claim upon which relief could be granted.

In this case, the Court concludes that Coultas's complaint does not, in its current form, adequately state a claim.  The Court therefore DISMISSES the complaint and DENIES her application as moot.  Coultas is granted leave to amend the complaint, but must do so by April 29, 2024.

## BACKGROUND

Coultas brings this action under 42 U.S.C. § 1983 against nineteen named defendants, including the Hawai'i County Police Department (HCPD) and various officers of HCPD and the Hawai'i Department of Human Services (DHS) in their individual capacities, as well as fifty unnamed defendants.  She alleges that on March 6, 2022, HCPD officers illegally arrested her and removed her then-three-year-old daughter, V.C., from her home, all without a warrant, court order, or exigent circumstances.  She further alleges that a DHS employee took custody of V.C., as well as Coultas's then-fourteen-year-old daughter, S.C., and placed them in custody without a warrant, court order, or exigent circumstances.  And she alleges that Defendants later conducted warrantless examinations of V.C. and S.C. without her consent and absent exigent circumstances, and eventually placed them in the foster care of their then-twenty-three-year-old estranged half-sister, A.M.

According to Coultas's complaint, she reported concerns about A.M. to certain Defendants.  In particular, Coultas alleges that she reported that A.M. was "a sex worker" and had a "history of violence," an "untreated mental illness," and a "pattern of violent and disturbing behavior towards her siblings."  ECF No. 1, at PageID.17 (Compl. ¶ 52).  Coultas alleges that Defendants "disregarded" these safety concerns, and that this inaction was deliberately indifferent toward, and in reckless disregard of, the safety of her children.  *Id.*  V.C. and S.C. remained in

A.M.'s custody for nine months, until they were removed on November 18, 2022, on an emergency basis for "reports of ongoing physical abuse, mental abuse and se[x]ual exp[lo]itation" by A.M. and her attorney, E.F.  *Id.* at PageID.18 (Compl. ¶ 54).

Coultas alleges that this entire series of events began on March 2, 2022, when she agreed to allow S.C. to go hiking with A.M. "just a week before the family's planned return to the State of Arizona."  *Id.* at PageID.15 (Compl. ¶ 39). A.M. "failed to return S.C." and kept her in her custody thereafter.  *Id.* (Compl. ¶ 40).  And on March 5, 2022, "a complaint was made to the DHS Child [Welfare] Service's hotline alleging abuse of S.C. had occurred on March 1st, 2022 by Plaintiff and reportedly recommending Plaintiff not be contacted by DHS."  *Id.* (Compl. ¶ 41).  The arrest of Coultas and removal of V.C. took place the next day.

Coultas makes several other allegations, including that one Defendant "aggressively interrogated" her and "extracted private information," *id.* at PageID.17 (Compl. ¶ 49); that on an unknown date in 2022, "while S.C. was in the foster placement with [A.M.], S.C. was prescribed birth control without Plaintiff's knowledge or consent," *id.* at PageID.18 (Compl. ¶ 53); that after the children were removed from A.M.'s custody, V.C. was placed with "a previously uninvolved father" despite his "addiction to methamphetamines and violent criminal history," *id.* at PageID.19 (Compl. ¶ 58); that Coultas's visitation of her children has been

severely restricted; and that S.C. is now sixteen years old and "living in the home of a single 30-year-old man" to whom she was introduced by A.M., *id.* at PageID.20 (Compl. ¶ 61).  Coultas's broadest allegation is that after Defendants failed to adequately protect her children, "an agency-wide cover-up ensued, involving both DHS Defendants and H[C]PD Defendants," as well as other defendants whom Coultas has as of yet been unable to identify.  *Id.* at PageID.19 (Compl. ¶ 56).

Coultas alleges five claims for relief, which collectively appear to contend that Defendants violated her constitutional rights to familial association and privacy and against unreasonable searches and seizures; conducted an unlawful examination of her children without a warrant, consent, or exigent circumstances; committed perjury, fabricated evidence, and suppressed exculpatory evidence; failed to protect her children in the course of their foster placement; assaulted Coultas and her children; falsely arrested and imprisoned Coultas and her children; and conspired to commit these violations.  *Id.* at PageID.21-37 (Compl. ¶¶ 62-109).

## <u>DISCUSSION</u>

### A.  **Screening Under the In Forma Pauperis Statute**

"[F]iling a lawsuit in federal court is an expensive process."  *Rosa v. Doe*, 86 F.4th 1001, 1003 (2d Cir. 2023).  In recognition of that fact, Congress enacted the federal in forma pauperis statute, which "represents a significant effort to ensure

the ability of impoverished litigants to prosecute meritorious claims or defenses without disadvantage." *Id.* at 1004.  Under that statute, this Court is authorized to allow a litigant to bring a suit without prepayment of fees or security.  28 U.S.C. § 1915(a)(1).

Congress also recognized, however, the need to ensure that such lawsuits are properly screened.  And while the in forma pauperis law "is not meant to be a series of traps and travails for pro se litigants," *Rosa*, 86 F.4th at 1007, a Court is required, under 28 U.S.C. § 1915(e), to screen all in forma pauperis complaints, *see Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).  Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See id.* at 1126-27; 28 U.S.C. § 1915(e)(2)(B).  When evaluating whether a complaint fails to state a valid claim for screening purposes, the Court applies the pleading standards in Rule 8 of the Federal Rules of Civil Procedure.  *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

Under Rule 8, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  Moreover, a pro se complaint must always be construed liberally.  *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003).  To show an entitlement to relief, however, it is not enough for a complaint to allege "labels and conclusions."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, the complaint's factual allegations must be "enough to raise a right to relief above a speculative level."  *Id.* And while "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable," the complaint must still include sufficient "factual enhancement" to cross "the line between possibility and plausibility."  *Id.* at 556-57; *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014).

In considering whether a complaint's allegations are sufficient, the Court must proceed in two steps.  First, the Court must "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Eclectic Props.*, 751 F.3d at 996 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Second, the Court must "assume the veracity of well pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief."  *Id.* (cleaned up).  To survive this second step, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

**B.      Coultas's Complaint Does Not Adequately Allege a
         Plausible Entitlement to Relief**

In this case, Coultas brings her claims under 42 U.S.C. § 1983, and therefore

must allege "(1) that a right secured by the Constitution or laws of the United

States was violated, and (2) that the alleged violation was committed by a person

acting under the color of State law." *Long v. County of Los Angeles*, 442 F.3d

1178, 1185 (9th Cir. 2006) (citation omitted).  Even construing Coultas's

complaint liberally, the Court concludes that dismissal is appropriate because the

complaint fails to state a § 1983 claim upon which relief can be granted.

1. The complaint names HCPD as a defendant.  As Coultas acknowledges,

HCPD is "a subdivision, entity, or administrative arm of the COUNTY OF

HAWAII."  ECF No. 1, at PageID.6.  For that reason, HCPD is "not separately

subject to suit under § 1983."  *Oyadomari v. Sutherland-Choy*, No. 19-00656, 2020

WL 61573, at *2 n.6 (D. Haw. Jan. 6, 2020) (citations omitted).  Coultas's claims

against HCPD therefore must be treated as "claims against the municipality."

*Gomes v. County of Kauai*, 481 F. Supp. 3d 1104, 1110 (D. Haw. 2020).

Coultas's complaint has not plausibly alleged municipal liability against

Hawai'i County for purposes of § 1983.  In *Monell v. Department of Social*

*Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality can be

sued directly under § 1983, but only in discrete circumstances.  A plaintiff can

allege municipal liability under § 1983 in any of three ways.  First, a municipality

can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action. *Id.* at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.").  In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it.  *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066-67 (9th Cir. 2013).  Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled" it operates with the force of law.  *Monell*, 436 U.S. at 691.  Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference toward the rights of its inhabitants.  *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).  Under this failure-to-train theory, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employee to commit the constitutional deprivation.  *Id.* at 391; *Monell*, 436 U.S. at 694.  A municipality cannot be held liable under § 1983 "solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691 (italics omitted).

In this case, Coultas has not plausibly alleged that a final policymaker expressly enacted or authorized a policy regarding any of the complained-of

conduct. Her complaint includes conclusory allegations that amount to legal conclusions, but those must be disregarded under *Twombly* and *Iqbal*. *See, e.g.*, ECF No. 1, at PageID.31 (alleging, in conclusory fashion, that Hawaiʻi County, "including through [its] entity H[C]PD, established and/or followed policies which were the moving force behind the violations of Plaintiff's constitutional rights"). And while Coultas provides various factual allegations about her own experiences, she alleges no facts describing any well-settled and permanent practices of either HCPD or DHS that could have played a role in causing those alleged experiences.

Nor does Coultas adequately allege that any final policymaker ratified unlawful conduct of any Defendant. Here again, the complaint contains a number of conclusory allegations, but Coultas's only relevant factual allegations are that HCPD's Chief of Police, Defendant Benjamin Moszkowicz, "responded to Plaintiff's police misconduct complaint on February 13th, 2023 stating officers Kyle Murray and Scott Hammons had not violated police policies." ECF No. 1, at PageID.13. Coultas provides no detail about the nature of her complaint or about the information available to Chief Moszkowicz on or before February 13, 2023. Accordingly, she has not plausibly alleged that Chief Moszkowicz *knew* that officers Murray and Hammons had committed any violations of law when he allegedly found to the contrary. *See Ellins*, 710 F.3d at 1066-67 (finding that a *Monell* claim failed because although the policymaker had approved a decision,

there was no allegation that he "knew that the decision was in retaliation for protected speech or that she ratified the decision despite such knowledge"); *see also Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("[R]atification requires, among other things, knowledge of the alleged constitutional violation.").

Likewise, Coultas's conclusory allegations that the training of HCPD and DHS officers was inadequate, *see* ECF No. 1, at PageID.31-32, are insufficient to state a claim. Under *Twombly* and *Iqbal*, it does not suffice to allege, generically, that a municipality failed to train its employees. Nor may a plaintiff make out a failure-to-train claim merely by alleging that wrongdoing at some point occurred; a municipality may not be held liable "solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691 (italics omitted). Here, Coultas does not factually describe any alleged training practices, say how those particular training practices were deficient, or directly link any such training to her experiences. She therefore has not plausibly alleged a failure-to-train claim.

For these reasons, Coultas's claims against Defendant HCPD—which are, as noted, in fact claims against Hawai'i County—are DISMISSED.

2. The remaining Defendants are persons named in their individual capacity, which can be appropriate in § 1983 actions. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). But Coultas's complaint does not provide sufficient factual matter to plausibly allege a claim against any of these Defendants.

10

a.  Coultas's complaint names HCPD Chief Moszkowicz and Former HCPD Chief Paul Ferreira as defendants in their individual capacity.  But the complaint does not plausibly allege that they were in fact involved in, or otherwise constitutionally culpable for, any of the alleged wrongdoing.

As noted above, Defendant Moszkowicz's only alleged involvement in the controversy at issue was to review a complaint about officer misconduct and to conclude that no misconduct occurred.  ECF No. 1, at PageID.13.  And just as these allegations are insufficient to present a plausible ratification claim for *Monell* purposes, they are insufficient to state a claim for relief against Defendant Moszkowicz individually.  The complaint is devoid of any factual allegations that would support the conclusion that Defendant Moszkowicz knew that officers under his supervision had committed violations of law when he found that they did not.

The complaint is likewise deficient as to Defendant Ferreira:  it does not factually allege any conduct on his part.  The complaint does allege that Defendant Ferreira was the supervisor of other officers alleged to have "illegally imprisoned" Coultas without reading her *Miranda* rights or explaining the circumstances of her arrest to her, *see* ECF No. 1, at PageID.24; but the complaint provides no factual basis to conclude that Defendant Ferreira even knew these alleged events took place.  The complaint otherwise contains only conclusory allegations against Defendant Ferreira that cannot suffice to state a plausible claim.  *See, e.g.*, ECF

No. 1, at PageID.29-30 (making the conclusory allegation that Defendant Ferreira "acted with malice and with the intent to cause injury to Plaintiff," with no factual substantiation).

For these reasons, the claims against Defendants Moszkowicz and Ferreira are DISMISSED.

b.  The complaint does make several factual allegations about the conduct of HCPD officers Kyle Murray and Scott Hammons, who are named as defendants in their individual capacity.  In particular, the complaint alleges that Defendants Murray and Hammons were the HCPD officers who, on March 6, 2022, "illegally arrested Plaintiff in her home without exigent circumstances or a warrant or court order, in violation of her first, fourth and fourteenth amendment rights" and "seized Plaintiff's sleeping 3-year-old daughter, V.C., without a warrant, court order or exigent circumstances, in violation of her fourth amendment rights against unreasonable searches and seizures and her fourteenth amendment right to family integrity and due process." *Id.* at PageID.16.

The First and Fourteenth Amendments protect against "unwarranted interference with the right to familial association." *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018).  State actors may only interfere with these rights through "fundamentally fair procedures." *Id.*  And "[o]fficial conduct that shocks the conscience in depriving parents of a relationship with their children is cognizable

as a [constitutional] violation." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (cleaned up).  When an officer has time for deliberation, an officer's "deliberate indifference" may be sufficient to shock the conscience.  *Id.*

Here, although the alleged conduct of Defendants Murray and Hammons could shock the conscience if they had been deliberately indifferent, the complaint does not offer factual allegations to plausibly allege that mental state.  For instance, although the complaint makes the conclusory allegation that Defendants Murray and Hammons acted without exigent circumstances, the complaint itself acknowledges that they acted only after a complaint was made to DHS's Child Welfare Service's hotline in which the complainant alleged that Coultas had abused S.C. just four days earlier.  The question, therefore, is whether this hotline complaint provided exigent circumstances.  And Coultas sets forth no factual allegations to support a plausible inference that the hotline complaint did not do so: there are no factual allegations about the nature of the hotline complaint or the degree or severity of the abuse it alleged.  Nor does Coultas's complaint offer any factual allegations to support a plausible inference that Defendants Murray and Hammons knew or had reason to know that the hotline complaint was unfounded. Indeed, the complaint, as it stands, does not offer enough factual allegations even to support a plausible inference that the hotline complaint was unfounded.

13

Separately, the complaint alleges that Defendants Murray and Hammons violated Coultas's Fourth Amendment rights (enforceable against state actors through the Fourteenth Amendment) through unlawful searches and seizures. Here, the theory of liability appears to be that Defendants Murray and Hammons entered Coultas's home (to arrest her and remove her child) "without a warrant, court order or exigent circumstances."  ECF No. 1, at PageID.16.  A violation of a plaintiff's Fourth Amendment rights can serve as a basis for a § 1983 claim.  To the extent Coultas is alleging excessive or unreasonable force, she must plausibly allege that the officers acted in a manner that was objectively unreasonable "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  To the extent she is alleging an unreasonable search, she must plausibly allege that the officers conducted "an entry into a residence that is not under a warrant, that lacks consent, and that is not justified by exigent circumstances or an emergency." *Mendez v. County of Los Angeles*, 897 F.3d 1067, 1075 (9th Cir. 2018).  As explained above, the complaint does not offer sufficient factual allegations to plausibly allege that Defendants Murray and Hammons acted without an objectively reasonable belief that there were exigent circumstances or an emergency.

For these reasons, the claims against Defendants Murray and Hammons are DISMISSED.

      c.  The allegations against Defendants Zenas Pacheco and Scott Amaral are also insufficient to state a plausible claim for relief.  The complaint alleges that these Defendants supervised Defendants Murray and Hammons at HCPD at the time they arrested Coultas and removed V.C. from her home.  But as noted above, the complaint does not plausibly allege that Defendants Murray and Hammons acted with deliberate indifference in taking those steps.  The complaint likewise does not plausibly allege that Defendants Pacheco and Amaral knew that Defendants Murray and Hammons had acted with deliberate indifference, let alone that they played any role in encouraging or causing them to act in that manner.

In a similar vein, the complaint alleges that Defendants Pacheco and Amaral were supervisors of Defendants Murray and Hammons when they "illegally imprisoned" Coultas without reading her *Miranda* rights or explaining the circumstances of her arrest to her.  ECF No. 1, at PageID.24.  The complaint does allege that Defendant Pacheco signed the police reports.  *Id.* at PageID.13.  But the complaint does not provide a sufficient factual basis to conclude that Defendants Pacheco and Amaral knew that Defendants Murray and Hammons engaged in any *unlawful* conduct in carrying out the arrest, or even that Defendant Amaral knew the alleged arrest took place at all.

15

For these reasons, the claims against Defendants Pacheco and Amaral are DISMISSED.

        d.  The final defendants named in their individual capacity are several officers and employees of DHS.  The complaint does not allege any plausible claims for relief against any of these Defendants.

To begin with, the complaint names the Director of DHS, Cathy Betts, as a defendant in her individual capacity.  The allegations against her are, however, largely conclusory.  For example, the complaint alleges that Defendant Betts and others "failed to intervene and failed to remove S.C." from an "inappropriate and dangerous placement," but the complaint does not provide any factual allegations to plausibly support the inference that Defendants Betts would even have known any of the relevant facts.  *Id.* at PageID.21.  Although the complaint alleges, generically, that "it was known and/or soon after brought to" Defendant Betts's attention "that all these safety risks" existed with the foster care placement of V.C. and S.C., *id.* at PageID.28, the complaint does not allege when this occurred, what information was provided or in what context, or why the presented information would have been sufficient to create a constitutional obligation to act.  For these reasons, the claims against Defendant Betts are DISMISSED.

The complaint also names DHS social workers, Theresa Witten and Henry Galapir, as defendants in their individual capacity.  It alleges that Defendant

Witten participated in the removal of V.C. from Coultas's home on March 6, 2022, transported V.C. and S.C. to a medical center for warrantless examinations without Coultas's consent "and absent exigent circumstances," and appointed A.M. as a "special licensed resource caregiver" for Coultas's children.  *Id.* at PageID.16.  As noted above, however, the complaint does not provide sufficient factual allegations to conclude that the arrest of Coultas and the removal of her children from her home were in fact done without an objectively reasonable belief that exigent circumstances existed.  Nor does the complaint allege that Witten knew or even had any reason to know that A.M. would not be a suitable caregiver.  And while the complaint alleges that Galapir "aggressively" interrogated Coultas to obtain "private information," "fra[u]dulently manipulated" that information, and created a report with "false, perjurious statements and omissions," *id.* at PageID.17, these are merely conclusory assertions that do not suffice to state a plausible claim under *Twombly* and *Iqbal*.[1]  For these reasons, the claims against Defendants Witten and Galapir are DISMISSED.

---

[1]      "To prevail on a § 1983 claim of deliberate fabrication," a plaintiff must prove not only the act of deliberate fabrication, but also that the deliberate fabrication "caused the plaintiff's deprivation of liberty."  *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).  Here, the complaint does not plausibly allege that any Defendant made fabrications, did so deliberately, or caused deprivations of liberty through those actions.

As for the remaining DHS Defendants—Elladine Olevao, Mark Galloway, Tonia Mahi, Mark Morikawa, Kainoa Schubert, Chelsea Oliveira, Karlan Osorio, Daisy Hartsfield, and R. Malia Taum-Deenik—the complaint alleges that some of them were warned that A.M. was a "sex worker, has a history of violence, an untreated mental illness and a pattern of violent and disturbing behavior towards her siblings," but that Defendants "disregarded" those and other reported dangers. *Id.* at PageID.17. The complaint does not factually allege what information was provided, when it was provided, in what manner it was provided, or why it would have been sufficiently compelling to create a constitutional obligation for Defendants to act upon it. The complaint's generalized allegation that A.M. was a "known sex-worker" is too conclusory to be entitled to the presumption of truth. *Id.* at PageID.18. Similarly, the complaint broadly alleges that some of the DHS Defendants took "adversarial actions to prevent family reunification" and "maliciously engaged in parental alienation tactics . . . and brainwashing of S.C." *Id.* at 20. But Coultas provides no factual basis for those conclusory allegations. Furthermore, to the extent the complaint is challenging state court decisions regarding child custody, those challenges must be made through the state court appellate process rather than a § 1983 suit. *See Watson v. State Deputy Att'y Gen.*, No. 09-00286, 2009 WL 1789346, at *2 (D. Haw. June 23, 2009); *see also D.C.*

18

*Ct. of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415-16 (1923).

For these reasons, the claims against Defendants Olevao, Galloway, Mahi, Morikawa, Schubert, Oliveira, Osorio, Hartsfield, and Taum-Deenik are DISMISSED.

3.  As a final matter, Coultas makes sweeping allegations that all Defendants engaged in an "agency-wide cover-up" of their failure to protect Coultas's children.  ECF No. 1, at PageID.19.  In particular, she alleges that unspecified Defendants refused to provide Coultas with access to forensic interviews of her children detailing their abuse.  *Id.*  But Coultas does not set forth any factual allegations about how she requested the data, how or why her request was denied, and by whom, nor does she adequately allege that she had a right to that data. These conclusory allegations do not suffice to state a plausible claim.

## C.   Leave to Amend the Complaint

Although the complaint does not plausibly allege a claim for relief in its current form, the Court recognizes that Coultas is proceeding pro se and that she could possibly cure the deficiencies by submitting an amended complaint. Accordingly, the Court dismisses the complaint without prejudice and grants Coultas leave to amend it.

Any amended complaint—which should be titled "First Amended Complaint"—must be filed by April 29, 2024 and must cure the deficiencies identified above; that is, Coultas must provide sufficient facts to plausibly support her claims, under the standards of *Twombly* and *Iqbal*, against any defendant she chooses to name.  Coultas is cautioned that failure to timely file an amended complaint that addresses the deficiencies identified above will result in the automatic dismissal of this action.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court DISMISSES the complaint and DENIES Coultas's in forma pauperis application as moot.

If Coultas elects to file an amended complaint, she must comply with the following requirements:

(1)     Coultas's deadline to file an amended complaint is April 29, 2024;

(2)     Coultas's amended complaint should be titled "First Amended Complaint";

(3)     Coultas must cure the deficiencies identified above; and

(4)     Coultas must file an in forma pauperis application with the amended complaint or pay the applicable filing fee.

//

//

Coultas is cautioned that failure to timely file an amended complaint that conforms with this Order and file an in forma pauperis application (or pay the applicable filing fee) will result in automatic dismissal of this action.

IT IS SO ORDERED.

DATED:  March 29, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 24-00104 MWJS-KJM; *Dr. Sarah Coultas v. Cathy Betts et al.*; ORDER DISMISSING COMPLAINT AND DENYING APPLICATION TO PROCEED IN FORMA PAUPERIS

21