IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| DR. SARAH COULTAS,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ELLADINE OLEVAO, *et al.*,<br><br>　　　　Defendants. | Civil No. 24-00104 MWJS-KJM<br><br>ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND DENYING COUNTY DEFENDANTS' MOTION TO DISMISS |

### INTRODUCTION

In this lawsuit, Plaintiff Dr. Sarah Coultas alleges that two county police officers and several state child welfare agents violated her constitutional rights when they arrested her, separated her from her minor children, and placed those children in foster care. Defendants now move to dismiss the operative complaint. For the reasons explained below, the Court GRANTS the child welfare agents' motion to dismiss, but DENIES the police officers' motion to dismiss. While the Court does not grant Coultas further leave to amend at this time, it affords her an opportunity to submit a letter explaining how she would remedy the identified deficiencies in the dismissed counts if given an opportunity to do so.

//

//

## BACKGROUND

Coultas brought her suit in forma pauperis (IFP), that is, without prepayment of fees. For that reason, the Court was required to screen her initial complaint before any defendant could be served with process. *See* 28 U.S.C. § 1915(e). After conducting its screening obligation, the Court dismissed the complaint for failure to state a claim for relief. ECF No. 5. The Court gave Coultas leave to amend, and she filed a First Amended Complaint (FAC), ECF No. 6, which survived screening in certain respects, ECF No. 9.

Coultas' surviving claims are brought under 42 U.S.C. § 1983. In them, she alleges that on March 6, 2022, Hawaiʻi County Police Department (HCPD) officers—Defendants Kyle Murray and Scott Hammons—illegally entered her home to arrest her, seized and removed her then-three-year-old daughter, V.C., from her home, and seized and detained her fourteen-year-old daughter, S.C., all without a warrant, court order, or exigent circumstances. Coultas further alleges that at the police station, a Hawaiʻi Department of Human Services (DHS) employee—Defendant Theresa Witten—took custody of V.C. and S.C. without a warrant, court order, or exigent circumstances, arranged for warrantless examinations of V.C. and S.C. without Coultas' consent, and placed them in the foster care of their then-twenty-three-year-old half-sister, A.M. And she alleges that after she was released from custody the next day, she began warning other DHS employees—the remaining Defendants—that A.M. was not a suitable

2

guardian, and that these Defendants nonetheless failed to take reasonable steps to protect V.C. and S.C.

Although these claims survived this Court's screening, the screening process is done without the benefit of adversarial briefing and does not preclude a defendant from later filing a motion to dismiss raising additional arguments for dismissal.[1] And Defendants have now filed motions to dismiss the FAC, ECF No. 48 (motion on behalf of DHS Defendants); ECF No. 58 (motion on behalf of HCPD Defendants), which Coultas opposes, ECF Nos. 62 & 65. The Court elects to decide this motion without a hearing, as authorized by Local Rule 7.1(c).

## DISCUSSION

### A.   Coultas's Untimely Opposition

As a threshold matter, the officer Defendants—Murray and Hammons—argue that because Coultas' opposition to their motion was filed a day late and was not served

---

[1]   To be sure, some courts have reasoned that if a screening order becomes binding law of the case, a defendant must file a motion for reconsideration from the screening order rather than a new motion to dismiss. *See Laszloffy v. Garcia*, No. 19-cv-01173, 2024 WL 870580, at *2 (D. Nev. Feb. 29, 2024) (describing the varying approaches of district courts). And there apparently is "no clear guidance from the Ninth Circuit" on this issue. *Id.* (internal quotation marks omitted). This Court concludes, however, that a screening order—which is issued without adversarial testing and, indeed, before defendants have even been served—should not implicate the law-of-the-case doctrine or otherwise weigh against a fresh review on a motion to dismiss. Defendants have "a procedural right to bring [a motion to dismiss] and to have their arguments considered," an earlier screening order notwithstanding. *Baldhosky v. Hubbard*, No. 12-cv-01200, 2017 WL 68098, at *2 (E.D. Cal. Jan. 5, 2017).

3

until two days after that, it should be disregarded or stricken from the record.  ECF No. 67, at PageID.437.

Concededly, this Court's local rules do allow for that result.  *See* LR7.2 ("Any opposition or reply that is untimely filed may be disregarded by the court or stricken from the record.").  But that result is not required.

In this case, Coultas is proceeding pro se, and she appears to have generally endeavored to adhere to the Court's deadlines.  *See* ECF No. 57 (recognizing the Court's deadline to oppose DHS Defendants' motion and requesting an extension of time).  Moreover, the delay in her filing her opposition was only a matter of days.  Defendants still had ample time to file their replies—and indeed did so—and there is no reason to believe that the brief delay in receiving Coultas' opposition caused them any prejudice.  Under these circumstances, the Court declines to strike or disregard Coultas' filing.

Coultas is reminded, however, that she must comply with all deadlines, and that, as Defendants Murray and Hammons point out, the Court retains the discretion to strike or disregard any future untimely filings.

**B.   HCPD Officer Defendants' Motion to Dismiss**

The Court next turns to the merits of Defendants' motions, beginning with the motion filed by the HCPD officers, Murray and Hammons, who are named in Counts 1 and 4 of the FAC.  Counts 1 and 4 allege that the officers unconstitutionally separated Coultas' minor children from her without a warrant, court order, or exigent

4

circumstances. They further allege that the officers unconstitutionally arrested Coultas in her home, again without a warrant, court order, or exigent circumstances.

In their motion to dismiss, the officer Defendants contend that both counts fail to state a claim against them. In the alternative, they argue that they are entitled to qualified immunity.

1. In contending that the FAC does not state a claim on these grounds, the officer Defendants do not dispute that the Fourteenth Amendment protects against "unwarranted interference with the right to familial association." *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018). Nor do they dispute that "[o]fficials may not remove children from their parents without a court order unless they have 'information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury.'" *Id.* (quoting *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007)).

The officers do not, moreover, contend that they had exigent circumstances to remove Coultas' children without a court order. Their argument, instead, is that they arrested Coultas based on a showing of probable cause that she had physically abused a family or household member. ECF No. 58-1, at PageID.292 (citing Hawaiʻi Revised Statutes (HRS) § 709-906(2)). Once Coultas was under arrest, she could not care for the children herself. For that reason, the officers briefly took her children into protective custody and ultimately delivered them to DHS Defendant Theresa Witten. Under these

5

undisputed facts, the officers say, it was the lawful arrest that required the children to be placed in temporary protective custody; the officers did not separate the children from Coultas at a time when she could have provided for them herself.

The officers' argument tees up the question of whether their arrest of Coultas was constitutional as a matter of law. One component of a lawful arrest is that it be supported by probable cause. And the officers explain that by March 6, 2022, they were presented with not only an anonymous tip, but also the in-person report of Coultas' own daughter, S.C., who reported that Coultas had physically abused her just days earlier. *Id.* at PageID.293. To be sure, the FAC alleges that Coultas did not, in fact, abuse S.C., and that there were alternative explanations for S.C.'s bruising. But probable cause does not require certainty—or even that officers be correct in their conclusion. It requires only "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). The Court agrees that the officer Defendants had that here.

The existence of probable cause alone, however, does not render the arrest lawful. The FAC separately alleges that the arrest was unconstitutional because it was "based on the entry of Coultas' home without a warrant, court order, or exigent circumstances." ECF No. 9, at PageID.135-36. The FAC specifically alleges, that is, that they arrested her "*in* her home." ECF No. 6, at PageID.79 (emphasis added). The

6

Supreme Court clearly established nearly forty-five years ago that there is "a firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573, 590 (1980).  To cross that threshold and enter a private citizen's home for an arrest, it is not enough for the officer to have probable cause.  They must also have either a warrant or an exception to the warrant requirement.  *Id.*; *see also Lange v. California*, 594 U.S. 295, 301 (2021).  An officer may, for example, enter a home to make a warrantless arrest when there are exigent circumstances—"emergenc[y] situations presenting a compelling need for official action and no time to secure a warrant." *Lange*, 594 U.S. at 301 (cleaned up).  And there are circumstances under which the imminent abuse of a child might generate an emergency requiring action even before an arrest warrant can be procured.  *See generally Maric v. Alvarado*, 748 F. App'x 747, 749 (9th Cir. 2018) (explaining that "exigent circumstances" for entering a home to conduct an arrest without a warrant include when it is "necessary to prevent physical harm to the officers or other persons" (cleaned up)).

But as noted, the officer Defendants have not argued that there were exigent circumstances here requiring them to remove Coultas' children without a court order.  And in relying instead on their arrest of Coultas, they have not argued that there were any exigent circumstances that required them to arrest Coultas in her home without an arrest warrant.  Nor have they offered any other justification for a departure from the warrant requirement.  Probable cause cannot be one, for "[n]o amount of probable cause can justify" entry into a person's home if there are no exigent circumstances and no

7

other exception to the warrant requirement is shown. *United States v. Johnson*, 256 F.3d 895, 907 (9th Cir. 2001) (internal quotation marks omitted).

The officers therefore have not shown that Counts 1 and 4 of the FAC fail to state a claim. They have relied on the fact that they arrested Coultas, but at least at this stage, have not shown that their arrest was lawful.

2. The remaining question is whether the officer Defendants are nonetheless entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Its protection applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks omitted).

To determine whether a right is clearly established, the Court must assess whether it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Court conducts this analysis "in light of the specific context of the case, not as a broad general proposition." *Id.* And while an official can be held liable even if the "very action in question" has not "previously been held unlawful," qualified immunity will shield the

8

officer from liability unless "in the light of pre-existing law the unlawfulness [was] apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

At least at this stage in the proceedings, the Court concludes that the officer Defendants are not entitled to qualified immunity. The Ninth Circuit has recognized that its precedent "clearly establish[es]" that officers cannot remove children from a parent "without a reasonable basis for believing that the children were in imminent danger." *Sjurset v. Button*, 810 F.3d 609, 618 (9th Cir. 2015). It is equally well established that officers cannot enter a private home to conduct an arrest without a warrant or an exception to the warrant requirement. As noted, that general principle has been clear for more than four decades. *See Payton*, 445 U.S. at 590.

To be sure, there are many situations in which officers might reasonably believe they were not violating that clear, but general principle. *See, e.g.*, *Sjurset*, 810 F.3d at 618 (holding that officers were entitled to qualified immunity because it was not clearly established that they had an obligation to second-guess the determination of child welfare officials that exigent circumstances existed); *Malek v. Green*, No. 17-cv-00263, 2017 WL 4284117, at *14-15 (N.D. Cal. Sept. 27, 2017) (finding qualified immunity where officers entered a home without a warrant only after the plaintiff voluntarily answered the officers' knock at his door). But in this case, the officer Defendants do not—at least at this stage—argue that there were any ambiguous circumstances here or that they had any reason, under the particular circumstances of this case, to be unsure whether a

9

warrantless entry into Coultas' home to arrest her would be allowed. They do not, for example, argue that they acted pursuant to a determination by DHS Defendants that exigent circumstances existed. *See Sjurset*, 810 F.3d at 618. Their submissions simply do not address that issue.

At least at this stage in the proceedings, then, the Court cannot find that the officer Defendants are entitled to qualified immunity. The officer Defendants' motion to dismiss is therefore DENIED.

### C.     Theresa Witten's Motion to Dismiss

Defendant Theresa Witten—a social worker with DHS—is also named in Counts 1 and 4 of the FAC, and she, too, moves to dismiss these counts on the grounds that they fail to state a claim for relief and that she is entitled to qualified immunity.

1. The FAC does not allege that Witten played any role in arresting Coultas or initially seizing Coultas' children. Instead, it alleges that after the officer Defendants arrested Coultas, they brought her minor children to a police station, where Witten allegedly illegally took Coultas' children into foster custody "without a warrant, court order or exigent circumstances." ECF No. 6, at PageID.77, 81. According to the FAC, Witten thereafter transported the children to a hospital for "warrantless examinations" without Coultas' consent or exigent circumstances, *id.* at PageID.81, and then appointed the children's half-sister, A.M. as their "special licensed resource caregiver," *id.* at PageID.83.

In moving to dismiss these claims, Witten points out that, based on the FAC, she played no role in Coultas' arrest or the initial removal of the children; that she received the children while Coultas was in custody and could not have cared for the children herself; and that Witten placed the children in the care of A.M. on March 6, 2022, before Coultas was released from custody. In light of these uncontroverted facts, Witten contends that "the FAC fails to plausibly allege that Witten was in fact personally involved in, or otherwise constitutionally culpable for, any of the alleged wrongdoing from HCPD's seizure of Plaintiff's Minor Children." ECF No. 48-1, at PageID.230-31.

The FAC does not allege that Witten participated in the entry into Coultas' home or Coultas' arrest.[2] Coultas also unquestionably had no right to have Witten bring her children to her jail cell while she was in custody.

Coultas' claims are not, however, limited merely to the initial separation of her children for the days that she was in custody; she makes the further allegation that even after her release, various state officials collectively separated her children from her for an extended period of time. *See David v. Kaulukukui*, 38 F.4th 792, 804 (9th Cir. 2022) (holding that, at the pleading stage, an alleged "21-day separation was significantly longer than reasonably necessary to alleviate a threat of immediate harm" to a child

---

[2] The Court agrees with Witten that, although the FAC alleges that the officer Defendants told Coultas they were under "orders" to take custody of her children, ECF No. 6, at PageID.107, it does not plausibly allege that any such orders came from Witten.

11

(cleaned up)); *see also Nicholson v. City of Los Angeles*, 935 F.3d 685, 691-92 (9th Cir. 2019) (holding that a "reasonable officer would know that participation in an ongoing seizure after any probable cause had dissipated violates the Fourth Amendment"). And the FAC alleges, in particular, that Witten played a role in that extended separation: Witten chose to place Coultas' children with A.M., and the children then remained with A.M. even after Coultas was released from custody the next day (and for several months thereafter). Witten, therefore, allegedly played an integral role in the sequence of actions that resulted in Coultas being separated from her children for an extended period. When a state actor "integral[ly] participat[es]" in a § 1983 violation—and when they have "some fundamental involvement in the conduct that allegedly caused the violation"—they may be held liable for it. *Nicholson*, 935 F.3d at 691-92.

Furthermore, the FAC alleges that Witten appointed "the 23-year-old mentally-unstable half[-]sister" as a special licensed resource caregiver for Coultas' children; that Witten did not communicate with Coultas about her children's whereabouts; and that Witten did not ask Coultas about "safe relative placement options" or even "verify [A.M.'s] relationship to the minors." ECF No. 6, at PageID.83. Accordingly, the FAC takes the position that even if the circumstances required Witten to make a placement, she nonetheless made an unconstitutionally improper placement. And it is true that, under Ninth Circuit precedent, a social worker can be constitutionally liable for placing a child "with an abusive or dangerous foster parent." *Shane v. County of San Diego*, 677

12

F. Supp. 3d 1127, 1139 (S.D. Cal. 2023) (citing *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 843-44 (9th Cir. 2010)).

    2.  Nonetheless, the Court agrees that Witten is entitled to qualified immunity against these claims.  Although the Court must, at the motion-to-dismiss stage, accept all of the FAC's factual allegations as true—and must do so even in considering whether qualified immunity applies, *Keates*, 883 F.3d at 1235—Coultas still bears the burden of showing that her right, which was allegedly violated, was clearly established, *Ram v. Rubin*, 118 F.3d 1306, 1310 (9th Cir. 1997).  Even liberally construing Coultas's pleadings here, she has not made that showing.

    As for the child-separation claim, the FAC does not allege that Witten herself had any knowledge that the officers entered Coultas' home without a warrant or exigent circumstances.  Nor does the FAC allege that Witten—rather than another DHS employee—authorized A.M. to take long-term custody of Coultas' children beyond the initial period of time when Coultas was in custody and unable to care for the children herself.  Accordingly, although Witten's temporary placement of the children with A.M. did allegedly *result* in their long-term separation from Coultas, the FAC does not allege that Witten is *responsible* for that extended separation.

    Indeed, the FAC does not allege that Witten had any control over the length of time that A.M. maintained custody of Coultas' children; in fact, some of its allegations imply the opposite.  For example, Coultas alleges that after she was released from

custody and "learned her children were placed in [A.M.'s] care" on March 8, 2022, she reported these concerns to various DHS Defendants. ECF No. 6, at PageID.83. Coultas does not, however, allege that she reported any concerns to Witten, which one would expect her to do if Witten had some role in deciding whether the children should remain with A.M. after Coultas' release from custody.

For these reasons, the Court concludes that Coultas has not met her burden of showing that Witten's conduct violated clearly established law. Accepting temporary custody after a parent has been arrested by others is not obviously unconstitutional, at least where the social worker has no awareness that the arrest was unconstitutional. *Cf. Sjurset*, 810 F.3d at 618 (holding that police officers had qualified immunity where they relied on child welfare officials' protective-custody determinations). No clearly established law prevents a social worker from arranging for medical examinations or temporarily placing children in the care of another after the police have arrested the parent for child abuse; indeed, Hawai'i law requires DHS employees to take these steps, *see* ECF No. 48-1, at PageID.236-37 (citing HRS § 587A-9), and there is no clearly established law instructing DHS employees to disregard these statutory obligations as unconstitutional. And, finally, no clearly established law requires a social worker who has made a temporary placement while the parent is in custody to take steps to terminate that temporary placement after the parent has been released from custody—

14

at least where, as here, there are no factual allegations that the social worker holds some responsibility or authority over the duration of such placements.

Nor is there any clearly established law that would have made it obvious to Witten that, under these factual circumstances, placing Coultas' children with their half-sister, A.M., was unconstitutional. Even accepting as true the FAC's allegation that A.M. was "mentally-unstable," ECF No. 6, at PageID.83, the FAC does not allege that Witten knew or even had any reason to suspect that was the case. Nor is there any clearly established law requiring a social worker to confer with a parent who has been arrested on abuse charges before deciding where to temporarily place the children in foster care. Finally, although the allegation that Witten did not take steps to verify A.M.'s relationship to the children is concerning, there is no clearly established law that failing to do so rises to the level of a constitutional violation under the circumstances of this case. The circumstances here include the fact that one of Coultas' daughters, S.C., had come to the police station with A.M. to report Coultas' abuse. Given that Coultas was taken into custody, Witten was faced with the task of making an expeditious temporary placement of Coultas' children on March 6, 2022, and the Court is not aware of any clearly established law rendering Witten's conduct obviously unconstitutional.

Accordingly, the Court GRANTS Defendant Witten's motion to dismiss the remaining claims against her.

### D.      The Remaining DHS Defendants' Motion to Dismiss

As to the remaining DHS Defendants, Coultas alleges in Count 3 of the FAC that she advised them that A.M. was not an appropriate guardian for her children, but that the DHS Defendants failed to take action to protect the children.

These DHS Defendants now move to dismiss this remaining claim against them, arguing that Coultas has no standing to allege that the state failed to protect her children on the theory that the children would need to advance those claims themselves. The DHS Defendants further argue that the FAC does not specify *when* Coultas reported safety concerns about A.M. to the DHS Defendants, and that it therefore does not plausibly allege that DHS failed to act expeditiously. The Court agrees with the DHS Defendants' first argument, and so it need not reach the second.

1. Under Rule 17(c)(1)(A) of the Federal Rules of Civil Procedure, "a general guardian may sue on a minor's behalf." *Belinda K. v. County of Alameda*, No. 10-CV-05797, 2011 WL 2690356, at *4 (N.D. Cal. July 8, 2011). In this case, however, Coultas is proceeding pro se, and "the Ninth Circuit has held that a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." *Id.* (citing *Johns v. County of San Diego*, 114 F.3d 874, 876-77 (9th Cir. 1997)); *see also Grizzell v. San Elijo Elem. Sch.*, 110 F.4th 1177 (9th Cir. 2024). This Court's local rules are consistent with that position. *See* LR81.1(a) (providing that pro se litigants "must appear personally on behalf of themselves only").

16

Accordingly, Coultas may proceed with her failure-to-protect claim only to the extent that she is alleging her own rights, rather than seeking to enforce those of her children. Coultas appears to recognize as much: in her papers, she writes that "[t]he harm inflicted on Plaintiff's children themselves . . . will be the subject of their own civil lawsuits at a future date, as is Plaintiff's children's right to do so, with the assistance of counsel or on their own at the age of 18." ECF No. 6, at PageID.105-06.

2. The remaining question is whether Coultas has standing to bring claims in her own right—or put more precisely, whether Coultas herself has an individual right to the protection of her children when they are in the state's care. Coultas has not identified any clearly established law supporting the conclusion that she has such a right, let alone that it would have been obvious to the DHS Defendants that they were violating any such right. And the Court, in its own review, has not identified any precedent clearly establishing as much. *Cf. Todd v. Ackley*, No. CIV 12-470, 2012 WL 1593218, at *2-3 (E.D. Cal. May 4, 2012) (holding father did not have standing to assert claim for failure to report child neglect on behalf of son).

To be sure, parents do have certain well-established and fundamental rights vis-à-vis their children—including a "liberty interest in the companionship, care, custody, and management of their children." *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2006); *see also Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary

17

function and freedom include preparation for obligations the state can neither supply nor hinder."). But Coultas's failure-to-protect claim is focused on the protection of her children while they were placed by the state in the custody of another, rather than the vindication of her parental right to be the one to provide that care and protection. And the cases recognizing a right to such protection speak of the right of the *children*, not of the *parent*. *See Tamas*, 630 F.3d at 842 ("Once the state assumes wardship of a child, the state owes *the child*, as part of that person's protected liberty interest, reasonable safety and minimally adequate care . . . ." (emphasis added) (internal quotation marks omitted)).

For that reason, the Court GRANTS the DHS Defendants' motion to dismiss Count 3, which is the remaining count against them.

### E.    Further Leave to Amend

The Court does not grant further leave to amend at this time. Nonetheless, the Court recognizes that Coultas is proceeding pro se and that it remains possible that, if granted leave, Coultas could make further factual allegations that might alter the calculus of whether Witten or the other DHS Defendants are entitled to qualified immunity.

For that reason, the Court will allow Coultas to submit a letter brief explaining what additional facts, if any, she would allege if she were afforded an opportunity to further amend her complaint. Coultas need not file a new proposed amended

18

complaint with the letter at this time; she need only explain what additional facts she *would* include in such an amended complaint if given the opportunity to file one. Any such letter must be filed by March 20, 2025.

The Court cautions Coultas that if she opts not to file such a letter by March 20, 2025, then the claims against Witten and the other DHS Defendants will be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, the Court (1) DENIES the motion to dismiss filed by Defendants Kyle Murray and Scott Hammons, ECF No. 58; and (2) GRANTS the motion to dismiss filed by Defendants Theresa Witten, Elladine Olevao, Henry Galapir, Mark Galloway, Mark Morikawa, Chelsea Oliveira, Kainoa Schubert, and Karlan Osorio (the "DHS Defendants"), ECF No. 48.

Although Coultas is not granted leave to amend her complaint at this time, she may file a letter requesting further leave to amend. If Coultas elects to do so, it must comply with the following requirements: (1) Coultas' deadline to file such a letter is March 20, 2025; and (2) in the letter, Coultas must explain what new factual allegations she would make that would cure the deficiencies in her claims against the DHS Defendants identified above. Coultas need not provide a new proposed amended complaint as part of this filing.

Coultas is cautioned that if she fails to timely file a letter requesting leave to file an amended complaint that conforms with this Order, the DHS Defendants (and Count 3 of the FAC) will be dismissed from this action with prejudice.

IT IS SO ORDERED.

DATED: February 18, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 24-00104 MWJS-KJM; *Dr. Sarah Coultas v. Elladine Olevao,* et al.; ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND DENYING COUNTY DEFENDANTS' MOTION TO DISMISS